IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Clifford Joseph Karolski, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 15-1101 |
| | ) | |
| v. | ) | |
| | ) | United States Magistrate Judge |
| Chief Davis, Assistant Chief Don Couch, Detective Stephen Roberts, (City of Aliquippa), | ) ) ) | Cynthia Reed Eddy |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION and ORDER[1]

**Cynthia Reed Eddy, United States Magistrate Judge**

Pending before the Court are cross motions for summary judgment. For the reasons stated herein, the Defendants' motion will be granted and Plaintiff's will be denied.

## I. Procedural and Factual Background

Plaintiff Clifford Joseph Karolski, proceeding *pro se* and currently confined at SCI-Camp Hill based on an unrelated incident, brings this action under 42 U.S.C. § 1983, claiming that his federal rights were violated by the Defendants when he was falsely charged with numerous counts of arson, notwithstanding his alibi, and was incarcerated for approximately one month until his charges were dismissed by a magistrate at his preliminary hearing.

Plaintiff's second amended complaint was filed on January 27, 2017. (ECF No. 43). On April 4, 2017 the Court dismissed defendant City of Aliquippa from this case with prejudice (ECF No. 49), leaving as defendants Couch, Davis, and Roberts. The remaining claims are:

---

[1] Because all of the parties have voluntarily consented to have the undersigned conduct any and all proceedings in this matter, the undersigned has authority to enter this Memorandum Order on the pending dispositive motion. (ECF Nos. 9, 40); 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

1

wrongful arrest, malicious prosecution and false imprisonment. Discovery ended on July 21, 2017. (ECF No. 59).

On September 5, 2017, Defendants filed their motion for summary judgment with brief in support, as well as concise statement of material facts and an appendix. (ECF Nos. 65, 66, 67, 68). Plaintiff filed his motion for summary judgment on September 13, 2017, with exhibits attached thereto (ECF Nos. 70, 71), although he did not file a concise statement of material facts, in derogation of the local rule and our order to do so. (ECF No. 50, citing L.R. 56). Plaintiff also filed a response to the Defendants' motion for summary judgment on September 29, 2017. (ECF No. 71). Defendants filed a brief in opposition to Plaintiff's motion on February 12, 2018. (ECF No. 73). Thus, the matter has been fully briefed and is ripe for disposition.

Unless otherwise stated, the following facts are not in dispute. Plaintiff's claims arise out of his arrest on November 8, 2013 and subsequent prosecution on arson related criminal charges arising out of a fire on August 29, 2013 at his house in Aliquippa, Beaver County, Pennsylvania. The Pennsylvania State Police investigated the cause and origin of the fire and determined that the fire originated inside the house, was deliberately set, and found its cause to be "incendiary." Defendant Detective Steven Roberts investigated the arson on behalf of the city of Aliquippa, and after his two-month long investigation, he filed an Affidavit of Probable Cause and Criminal Complaint ("the Affidavit") charging Plaintiff with offenses including arson, recklessly endangering death and injury and arson/collect insurance, 18 Pa. C.S.A.§ 3301(a)(i) and 3301(c)(3). A magisterial district judge issued a warrant for plaintiff's arrest and Plaintiff was arrested and detained on November 8, 2018 pursuant to that warrant. Following a preliminary hearing on December 12, 2013, the magisterial district judge dismissed all charges.

The affidavit of probable cause is contained in the record herein as Exhibit 11 to

Defendants' motion. (ECF No. 65-11 at 7). Defendant Roberts, then-detective, was the affiant. Roberts has also filed with the court a declaration (ECF No. 65-1), which provides a summary of the Affidavit, as well as other information.

Roberts was the Aliquippa's only detective in 2013. He investigated the suspected arson at 2023 McLean Street, Aliquippa, Beaver County, Pennsylvania on August 29, 2013. The house was vacant and nearly empty of all contents. The fire's origin was in the interior of the house in the dining room area. All utilities were off at the time of the fire. The Aliquippa Fire Department determined that the fire was suspicious, and called for investigative help from the Pennsylvania State Police Fire Marshal, which also confirmed the fire was suspicious in nature. The laboratory test results for "ignitable liquids" on items collected from the fire scene came back negative. The Affidavit did not state this. The Affidavit accurately states that the State Police investigator concluded that despite the negative results for ignitable liquids, it was intentionally caused by means of an "accelerant." The fire was classified as "incendiary," i.e. intentionally set.

On August 29, 2013, Plaintiff came into the Aliquippa police station and informed Defendant (then-Assistant Chief) Couch that he had worked from 2:15 p.m. until 11:45 p.m. on August 28, 2013, but that he would not make any statements regarding the fire. The next day Detective Roberts interviewed Plaintiff's wife, Delina D'Arcangelo. She informed him she had had the locks changed on the house at 2023 McLean after she obtained a protection from abuse order against Karolski which required him to move out of the house. She had had new dead bolt locks installed on the front and rear doors. She had moved out of the house in mid-July, 2013 due to the utilities being shut off. When she moved out she gave her keys to the house to her in-laws. Plaintiff lived with

his parents and Ms. D'arcangelo thought he would have access to the keys. She had not made any extra copies of the keys to the house while living there due to her fears that an extra key would somehow come into the possession of Plaintiff.

In their Statement of Undisputed Material Facts, Defendants concede there were multiple keys to the house. (ECF No. 67 at ¶ 30, citing the Amended complaint, ECF No. 43 at p.2). There is no dispute that Plaintiff had a key to the house. He had been seen removing items from the house after Ms. D'Arcangelo moved out of the house.

Through Beaver County Real Estate records and a mortgage settlement agreement provided to Roberts by Ms. D'Arcangelo, Roberts learned that the sole owner of the house at 2023 McLean Street was Plaintiff. Roberts also confirmed that the electricity at the house had been shut off prior to the fire due to non-payment. Furthermore, Roberts learned Plaintiff was behind in his mortgage payments; Chase Bank was in the process of taking action against him. Ms. D'Arcangelo told Roberts that while living at 2023 McLean she had received several letters from Chase Bank addressed to Plaintiff sent by certified mail. Roberts searched court records and learned that civil actions had been filed at the magistrate level for unpaid debts, suggesting that Plaintiff was having financial difficulties.

On August 31, 2013, Roberts was contacted by James Thomas of Travelers Insurance Company, which insured the property, advising it was conducting an "origin and cause" investigation. Travelers further advised Roberts Plaintiff had made a claim for the fire loss. On September 17, 2013 Roberts spoke with James Thomas, investigator for Travelers Insurance. He informed Roberts that Plaintiff provided an alibi that he was at the Rivers Casino and that Ms. D'Arcangelo was also listed as an insured on their policy.

According to the Affidavit, after speaking with the Travelers Investigator, Roberts

4

spoke with Ms. D'Arcangelo to inquire why she had not told him she was also listed on the insurance policy. She informed Roberts that she did not know that she was on the policy until Travelers contacted her about the claim. She learned this information after her last conversation with Roberts. According to Plaintiff, he had told the police that his wife was not listed on the policy; he had owned the house prior to their marriage.

Plaintiff's attorney James Villanova advised that his client would not provide a statement and that surveillance videotapes would show Plaintiff was at the Rivers Casino at the time relevant to the fire. Roberts contacted the Rivers Casino to determine whether their records would provide an alibi for Plaintiff. Rivers Casino explained that through Plaintiff's Player's Club Card and their video surveillance they were able to establish that he arrived at the Casino at 1:48 a.m. on August 29, 2013, played one machine, and then left the Casino at 2:08 a.m., twenty minutes after his arrival. Roberts subsequently confirmed this after obtaining copies of their records and surveillance video through a search warrant.

Roberts also served a search warrant on Plaintiff's employer, the U.S. Postal Service Bulk Mailing Center a/k/a Logistics and Distribution Center in Cranberry Township to obtain records of his work schedule on August 28th. Plaintiff had told Defendant Assistant Chief Couch on the morning of August 29th that he was at work in Cranberry Township from 2:15 p.m. until 11:45 p.m. on August 28th. The records produced by Plaintiff's employer showed that he did not work on August 28th.

Roberts also learned from neighbors that after Ms. D'Arcangelo moved out neighbors saw Plaintiff go in and out of the house at 2023 McLean Street to remove items on several occasions. This information confirmed the information provided by Ms. D'Arcangelo regarding Plaintiff having a key to the house. The members of the fire and

5

police departments who initially responded to the fire confirmed that there was no sign of forced entry at the home. The front and rear doors were locked. All windows and doors were closed. In addition, the fire was started in the interior of the home. The fire department had to break a window to gain access to the home. Therefore, the person who started the fire had a key to the house. Through discussions with the Pennsylvania State Police Arson Investigative Unit Roberts learned that the fire could have been started sometime before Plaintiff arrived at the Rivers Casino, or after he left the casino. Either time was consistent with the physical evidence.

Detective Roberts did not provide in the Affidavit information about Plaintiff's alleged alibi that he was at the Rivers Casino at the time of the fire, although he knew about the alibi at the time he submitted the Affidavit. He had determined that Plaintiff could nevertheless have committed the arson despite the alibi.

Neither Defendant Chief Andre Davis nor Assistant Chief Don Couch filed the criminal charges against Plaintiff, nor did they participate in his arrest or testify at the preliminary hearing.

## II.    Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, a court shall grant summary judgment in favor of the moving party only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is "one that might 'affect the outcome of the suit under governing law.'" *Smith v. Johnson & Johnson,* 593 F.3d 280, 284 (3d Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to a material fact is "genuine" if it "is one that 'may reasonably be resolved in favor of either party.'" *Lomando v. United States,*

667 F.3d 363, 371 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 250). The movant has the initial "burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015). If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. Cty. of Allegheny,* 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322–23; Jakimas v. Hoffman–La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007). When assessing a motion for summary judgment, the court "must construe all evidence in the light most favorable to the nonmoving party." *Id.* (citation omitted).

The standard of review for cross-motions for summary judgment is identical to the standard applicable to routine motions for summary judgment. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). "When confronted with cross-motions for summary judgment . . . 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'" *Van Arsdel v. Liberty Life Assurance Co. of Bos.*, 267 F. Supp. 3d 538, 545 (E.D. Pa. 2017) (citing *Erbe v. Conn. Gen. Life Ins. Co.*, Civ. A. No.06-113, 2009 WL 605836, at *1 (W.D. Pa. Mar. 9, 2009)).

**III.    Discussion**

Plaintiff brings his claims pursuant to 42 U.S.C § 1983. Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). In order to state a valid claim for relief under Section 1983, a plaintiff must first allege a violation of a right secured by the Constitution or laws of the United States and, second, a plaintiff must allege that the violation was caused or committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff asserts three claims pursuant to § 1983: false arrest, false imprisonment and malicious prosecution. The lack of probable cause is an essential element of each of these claims.[2] *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). Otherwise stated, the presence of probable cause is a complete bar to Plaintiff's federal claims for false arrest, false imprisonment, and malicious prosecution.

Although the existence vel non of probable cause is normally a factual issue for the jury's determination, like any other factual issue it may be resolved by the court as a matter of law if no genuine dispute exists on the record such that, if, based on the evidence as a whole, a jury could not reasonably conclude that the officers lacked probable cause to make the arrest and institute criminal proceedings. *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997).

---

[2] A false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law. *Baker v. McCollan*, 443 U.S. 137, 142 (1979). To assess claims of false arrest, the court must determine whether "the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). Malicious prosecution requires evidence that:

> (1) the defendant[ ] initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant[ ] acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Andrews v. Scuilli,* 853 F.3d 690, 697 (3d Cir. 2017) (citing *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005).

Since false arrest and malicious prosecution hinge on probable cause, the constitutional violation question in this case turns on whether "'a reasonable officer could have believed that probable cause existed' to arrest" the plaintiff at that time. *Blaylock v. City of Philadelphia*, 504 F.3d 405, 411 (3d Cir. 2007) (quoting *Hunter v. Bryant,* 502 U.S. 224, 228-29, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). Thus, the standard is an objective one and is to be applied based on the facts available to the officers at the time of their alleged unlawful conduct. *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994). The fact that the charges were dismissed at the preliminary phase of Plaintiff's criminal case does not negate the existence of probable cause to support his initial arrest and detention. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). As long as Defendants had a reasonable basis to believe that Plaintiff had committed the crimes with which he was charged, the arrest and proceedings thereafter are justified as being based on probable cause.

Plaintiff has challenged his arrest on the basis that the affidavit in support of the arrest warrant contained material omissions and/or misrepresentations which, when corrected, vitiate probable cause. Because he was arrested on a valid warrant, we focused the probable cause analysis on whether Defendants "'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant.'" *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). Therefore, we must concentrate on two elements: first, whether "the officer, with at least a reckless disregard for the truth, 'made false statements or omissions that create[d] a falsehood in applying for a warrant,' and second, whether those assertions or omissions were 'material, or necessary, to the finding of probable cause.'" *Dempsey v. Bucknell Univ*., 834 F.3d 457, 468–69 (3d Cir. 2016) (citing *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000).

9

However a certain tension exists when probable cause is at issue in a motion for summary judgment. *Dempsey*, 834 F.3d at 468. This is particularly so for analyses that center upon misrepresentations and omissions in the affidavit of probable cause. Although a finding of probable cause generally can be based on an officer's credibility determinations and independent assessments of conflicting evidence, "it is axiomatic that at the summary judgment stage, we view the facts in the light most favorable to the nonmoving party." *Id.* As a result:

> [We cannot] exclude from the probable cause analysis unfavorable facts an officer otherwise would have been able to consider. Instead, we view all such facts and assess whether any reasonable jury could conclude that those facts, considered in their totality in the light most favorable to the nonmoving party, did not demonstrate a "fair probability" that a crime occurred.

*Id.* Thus, an assertion "is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Wilson,* 212 F.3d at 788 (quoting *United States v. Clapp,* 46 F.3d 795, 801 n. 6 (8th Cir. 1995)). Misleading assertions can relate to even "minor details," and do not need a separate determination of relevance. The focus in these instances is upon evidence demonstrating that the affiant willingly and "affirmatively distort[ed] the truth." *Id.* at 788. Omissions are made with reckless disregard where "an officer withholds a fact in his ken that '[a]ny reasonable person would have known ... was the kind of thing the judge would wish to know.'" *Id.* (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993)). When an officer submits a sworn affidavit of probable cause, he or she "is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." *Dempsey*, 834 F.3d at 469 (quoting *Wilson*, 212 F.3d at 790).

Only after identifying such false statements or omissions will a court then consider

whether those false statements or omissions were "material or necessary" to the finding of probable cause. *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000).

With these guidelines at hand, we now turn to the positions of cross-movants, and facts as contained in the record. Prior to arresting Plaintiff, Defendants obtained an arrest warrant by submitting to the district justice the Affidavit. Plaintiff contends that Defendants are not entitled to summary judgment, and he is, because no genuine dispute of material fact exists as to whether the Affidavit contained false and misleading information as well as omissions. Plaintiff contends that, if that information was properly included, or otherwise made accurate, the Affidavit does not establish probable cause for his arrest. Defendants contend, on the contrary, that as contained in Detective Roberts' Declaration and Affidavit, as well as exhibits thereto, there is no material dispute that they did not knowingly or deliberately, or with reckless disregard for the truth, make false statements or omissions that created a falsehood in applying for the warrant such that statements or omissions are material or necessary to the finding of probable cause.

Plaintiff suggests that the Affidavit was "nothing but lies," specifically focusing on three alleged omissions or misrepresentation. First, Plaintiff claims that it was a lie to state that Detective Roberts was told Ms. D'Archangelo was listed on the homeowner's insurance policy, but she was unaware of the fact. According to Plaintiff, he told multiple people she was not listed on the policy. Second, Plaintiff contends that it is impossible to believe there was only one key to the house and the key was in Plaintiff's possession. The third identified "lie" was that the Affidavit omitted the laboratory tests revealed the tests for ignitable liquids on items collected from the scene came back negative. Plaintiff also proposes in his motion alternative hypothetical scenarios that the doors to the house could have been stuck due to heat expansion, rather than being locked by a perpetrator with a key, or that witness statements that the windows were open

11

to the house two days prior to the fire support a theory that persons other than Plaintiff could have entered the house and started the fire. Finally, Plaintiff argues that his alibi of being at the Rivers Casino proves his innocence and his inability to commit the crime.

We cannot agree with this characterization of the evidence. Based on our review of the records, the Court concludes that no genuine dispute of material fact exists as to probable cause because, as a matter of law, Defendants had probable cause to believe Plaintiff committed the offenses for which he was arrested and charged. Moreover, the omission of the hypothetical scenarios as to how others could have gotten into the house do not rise to the level of false statements or omissions that created a falsehood in applying for the warrant.

As to the notion of the number of keys in existence, evidence that other persons also had keys to the house, which was not included in the affidavit, was not "plainly exculpatory evidence" given that (there is no dispute) Plaintiff himself had the ability to make an unforced entry into the house. The uncontroverted investigator's report surmised this was the means by which the perpetrator gained access to the house. No factfinder could conclude that this created a falsehood in applying to the warrant. Even if it had, such an omission would not be material to the finding of probable cause, given all the other evidence in the record and as detailed in the Roberts Declaration and supporting documentation.

As to the omission of Plaintiff's Rivers Casino alibi, and viewing all facts that a reasonable jury would use to assess it, there can be no genuine dispute that such facts – even if recklessly disregarded by Roberts at the outset—would nevertheless demonstrate a fair probability that a crime occurred. If the alibi that plaintiff was at the Rivers Casino had been included, and it was a material omission, the reconstructed facts would also include the fact that Roberts investigated the alibi and found that plaintiff could have started the fire, despite having

gone to the Rivers Casino for a brief period of time. According to his declaration, through his discussions with the Pennsylvania State Police Arson Investigative Unit, he learned that the fire could have been started sometime "before Mr. Karolski arrived at the Rivers Casino, or after he left the Casino. Either time was consistent with the physical evidence." (ECF No. 65-1 at ¶ 25). No reasonable factfinder could conclude that there was an improper omission (a reference to an alleged alibi) because the investigation revealed Plaintiff could have committed the arson despite the alibi. This could not have changed the probable cause determination.

As to the laboratory results being negative for "ignitable" liquid, the information even if initially known by Defendant would not have vitiated the probable cause that supported Plaintiff's arrest. The laboratory's analysis did not change the State Police investigator's conclusion that the fire was started by means of an "accelerant" and the fire was "incendiary;" the Affidavit accurately states the arson investigator's conclusion that an accelerant was used. No reasonable fact finder could conclude in Plaintiff's favor that this was a false statement or omission that created a falsehood in applying for the warrant.

Finally, we note that there is no evidence of record to support the allegation that either Defendant Assistant Chief Don Couch or Chief Andre Davis were participants in the decision to criminally charge, arrest, or prosecute Plaintiff, nor is there any evidence of record to support a claim of supervisory liability for the alleged unlawful acts of Detective Roberts. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Capone v. Marinelli*, 868 F.2d 102, 106 (3d Cir. 1989). Plaintiff claims that he advised all three Defendants of his alibi and the existence of multiple keys to the house, as well as suggested to them that the fire could be related to copper thefts in the area. Regardless, there is no evidence in the record before us to lead a reasonable factfinder to conclude that either Couch or Davis were personally involved in the investigation,

13

the filing of charges, and his arrest.   Accordingly, summary judgment in their favor is appropriate, and plaintiffs motion will be denied as he has filed to show any genuine dispute in this regard.

The existence of probable cause is fatal to Plaintiff's Fourth Amendment claims. *DiNicola*, 25 F.Supp.2d at 637 (the lack of probable cause is an essential element for plaintiff's Fourth Amendment claims premised on alleged false arrest, false imprisonment, and malicious prosecution). Defendant Roberts had available to him credible information that Plaintiff had committed arson.  A reasonably prudent officer in his position could certainly conclude the same.

## IV.   Conclusion

Based on the foregoing discussion, the Defendants' motion for summary judgment will be granted, and plaintiff's will be denied.  An appropriate order follows.

**AND NOW**, this 24th day of April, 2018, upon consideration of the cross motions for summary judgment and the record herein, it is hereby **ORDERED** that the Defendants' Motion for Summary Judgment (ECF No. 65) be GRANTED and Plaintiff's Motion for Summary Judgment (ECF No. 70) be DENIED, and Judgment shall be entered in favor of Chief Andre Davis, Assistant Chief Don Couch, and Detective Steven Roberts.

Dated: April 24th, 2018.                                                            By the Court:

                                                                                                    s/ Cynthia Reed Eddy
                                                                                                    Cynthia Reed Eddy
                                                                                                    United States Magistrate Judge


cc:    **CLIFFORD JOSEPH KAROLSKI**
       MQ 0691
       SCI Camp Hill
       P.O. Box 200
       Camp Hill, PA 17001

       All registered counsel via CM-ECF